By tiie court.
The law merchant, as it obtains in England, is, generally speaking, the law of this country. Some exceptions *433 ■have been made, and some; more may be made, which convenience and necessity have directed, and mav hereatter suggest. The cus. tom among merchants with us, in regard to bills of exchange, is the 'Same which exists in England, as to protests, and notices of nonacceptance, and non-payment, and must be governed by the same rules.. The judge, at the trial, was therefore right, in rejecting evidence to prove a different usage from that which obtains in En. gland. In the case of foreign bills, a protest is universally neces» sary, whether for non-acceptance, or non payment. It is an essential part of the custom of merchants, and is requisite not mere-, iy on account of the damages and interest, but also on account of the principal sum; In respect to inland bills, a protest is only necessary on account of damages and interest, and is founded upon the statutes 9 and 10 W. 3, c. 17, and 3 and 4 Ann, c. 9, P. L. 93. A. A. 1786, P. L. 408. Evans on Bills, 91. See 8 Johns. 202. 5 Johns. 375. The cases cited, adjudged in the courts of the United States, do not shew a different custom, nor do they in any respect contradict this doctrine, but confirm it. They only go to show what evidence will be received ; and that the protest, or a copy of it, is not necessary to be produced. Notice of such protest, must be given to the party meant to be resorted to; but such notice need not be accompanied with the protest, or a copy thereof. Evans on Bills, 56. This notice ought to be given, as soon as the circumstances of the case will admit. Where there is ■a communication by post, it should be sent by the first post; but putting a letter into the post office seems to be sufficient, although it may miscarry. 2 II. Bl. 509. Chitty, 95.
Respecting bills sent to Europe, notice should be sent by the first-ship bound for the United States, according to the rule of the English courts respecting -bills sent to India. 2 H. Bl. 509. The judge did right, therefore, in charging the jury, to lay it down, that notice should be sent by the first opportunity that occurred, which the plaintiff might have known of, to the United States, whether it were direct to Charleston, or to some other port of the United Stales. And he did right, under the circumstances of the case, to leave it to the jury to presume, that an opportunity of sending notice sooner, than that by which the notice of non-payment was sent,.did occur, by which the plaintiff might have sent'notice to the indorsers, the defendants, of the non-acceptance, and which he neglected to embrace. The bill was presented for acceptance in the middle of November, 1801; and the defendants had no notice thereof, until gome time ip the latter end of March, following, inore than four *434 months, after. The probability is, that by the use of due diligence, notice might have been transmitted sooner, by some vessel, or ves* sels> fr0ln England to the United States. This natural and reasonable presumption, has not been rebutted by any evidence to the contrary< The lac}ies 0f the plaintiff, in neglecting to exercise reasonable diligence, to give timely notice to the indorser, of the nonacceptance of the drawee, might be considered as an extinguish* meat of the debt, as to the defendants ; and as discharging them from all responsibility on the footing of their indorsement. 1 T. R. 405. Ib. 167. 5 Bur. 2670. 1 T. R. 107. Chitty, 98. Bayley, 83. Evans, 57. See 6 East, 3, 14, 110.
But it has been insisted, on behalf of the plaintiff, that it was not necessary for him to give the deiendants notice of the non acceptanee of the bill in this case, because the drawer had become a bankrupt, before any notice of the non-acceptance could have been transifaitted to the defendants; and they could not have derived any advantage from the earliest notice that could have been sent to them, nor suffer any prejudice from the want of such notice. It seems to- be agreed, that the bankruptcy, or known insolvency, of the drawee, is no excuse for the want of notice. Evans, 59. But notice may be dispensed with, if the drawer have no effects in the hands of the drawee ; for in such case,, the drawer had no right to draw, and cannot be injured by want of notice. 1 T. R. 405, 410* To say that effects may come in after, before the bill is ■ due, is not sufficient. But will this doctrine apply in the case of an indorser, where the drawer is insolvent? See 1 T. R. 712. Where the indorser himself has become bankrupt, notice to his assignees, or to himself, cannot be necessary, for they cannot take up the bill; and the doctrine does not hold, as between bankrupt estates. 3 Bro. C. C. 1. In an action against the drawer, who became a bankrupt, it was held, that notice to the drawer was not necessary, because it appeared that lie bad no effects in the hands of the drawee; although the indorser had effects in the drawee’s hands, and the bill was drawn for accommodation to the indorser. Notice to the drawer would have been of no use. 1 Bos. & Pul. 652. Where the payee sued the drawer for non-acceptance, and it appeared (hat the drawee had no effects in his hands of the drawer, the court ihought notice was unnecessary. 2 T. R. 713. 1 lb. 405 It is laid down by Evans, see Essay on Bills, 62, “ That according to the French ordinance, notice of non-acceptance was not necessary to the indorsers, if neithei ihemselves, or the drawer, had effects in, the hands of the drawee: but the English courts, have adopt *435 ed a contrary rule, more correct; that the indorsers are not bound to make themselves acquainted with the transactions between the drawer and drawee, and are warranted in acting upon the supposition, that the bill was drawn by a person having sufficient authority for the purpose.” Where the drawer, or indorser, is a bankrupt, at the time of the acceptance or payment refused, it is unnecessary, as Chitty states-, to give notice to him, or his assignee. In remarking on this passage, and the case of Exparte Smith, 3 Bro. C. C. 1. Mr. Evans, page 63, says, “There does not appear to be any sufficient reason, for dispensing with notice to the drawer who is a bankrupt, or to his assignees, if the drawee is solvent, and still less for dispensing with such notice to the bankrupt indorser, or his assignees, where the drawer remains solvent; because in these eases, their right to recover against the solvent parties may be prejudiced by the want of notice. Where all the parties are bankrupts, no such prejudice can arise.” There is no case like the present, where the action is against the indorsers, who are solvent, and the objection is the want of notice to them, of the non-acceptance of the drawee, where the drawer has become a bankrupt. The insolvency or bankruptcy of the drawer, being admitted, we cannot see what advantage the indorser could derive from notice of non-acceptance of the drawee. In this case, resort has not been had to the drawer; and therefore, whether as to him, or his assignees, notice was necessary, need not be decided. As to the indorsers, the question is, was it necessary to give them timely notice of the non-acceptance of the drawee? The reason which runs through all the cases on this subject, must be adverted to, and considered, namely, the prejudice which the party resorted to is liable to sustain, in consequence of the Want of notice. If the indorsers had been apprized, as early as possible, of the non-acceptance of the bill, how could they have benefited themselves by that notice 1 Their recourse must have been to the drawer who had become a bankrupt, and consequently was insolvent. Nothing could have been obtained from him, but what might be obtained from his assigneés, without notice. We are therefore of opiuion, that it was not necessary in this case for the plaintiff, the immediate indorsee, to have given notice to the indorsers, the immediate and only indorsers, of the non-acceptance of the bill.* 1 Esp.Rep. 302.
Another argument for the plaintiff is, that at all events, the ob *436 jection of want of notice was waived by a subsequent promise to Pay- I*1 answer to this, the defendants say, such promise, or offer to pay, cannot be obligatory on them, seeing that it was made under a mistake, and through their ignorance of the law, relative to the subject matter of their promise. Cases have been referred to, wherein indorsers, having made such promises, without notice of the facts or circumstances of the case, to which their promises related, were exonerated. 5 Bur. 2670. T. R. 712. And it has been urged, that no solid distinction exists between mistakes in matters of fact, and mistakes, or ignorance, in matters of law. In the case of Archer v. the Bank of England, Doug. 638, this question arose, but was not decided. In Bize v. Dickason, 1 T. R. 285, it was touched on, but no express reference was made to a mistake in point of law merely. In a late case, see Chitty on Bills, 102, and Evans, on money had and received, &c. 24, it was laid down, that if a party does not know the legal consequences of all the facts within his knowledge, and pays money in conseqúence of such ignorance, and under an idea that he might be compelled to pay it, he shall be intitled to recover it back. We are of opinion, that under the circumstances attending this' case, the promise, or offer, of the defendants, to pay the bill, did not amount te a waiver of the want of notice ; for although they might have been cognizant of all the material facts, yet it appears they were ignorant of the legal consequences of their not having had notice : and made the promise, or offer, under a mistaken idea of legal obligation. See Peake, 202.
Upon the whole, we are of opinion, that a new trial ought to be-granted : on the ground, that notice was not necessary to be given to the defendants, of the non-acceptance of the bill, as they cannot,, by want of such notice, suffer any prejudice ; nor if seasonable notice had been given thereof, could they have obtained any ad. Vantage.
New trial granted.
Present, Grimke, Watiis, Trezkvant, and Brevard, Justices*;

 Qu. If notice to the indorser might not avail him, since ho could give no. tics to. the. drawer, and he might proceed, or his assignees, against die drawee,